BROOKE (RHODES v.). See Case No. 11,747.

## Case No. 1,936.

### BROOKE v. SCOGGINS.

[11 N. B. R. (1875) 258.][2]

Circuit Court, D. Oregon.

ACT OF BANKRUPTCY—PREFERENCE—WAREHOUSEMAN—RECEIPT.

This was an action brought by the assignee in bankruptcy of C. & Co., to recover the value of a quantity of grain alleged to have been transferred to the defendant, contrary to the provisions of the bankrupt act, and re-

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reprinted by permission.]

ceived by him with knowledge of the insolvency of C. & Co. The court charged the jury, among other things, that from the constructive delivery of the warehouse receipt in the mail at Portland, the property in the amount of grain therein specified, in the warehouse at Albany, vested in the defendant, if the same was not then otherwise disposed of. That at any time thereafter he might have separated it from the general mass of grain in the warehouse, or if the warehouseman removed all the grain but the amount the receipt called for it would be his specific property. The jury found a verdict for the defendant, and also found specially that an agreement and settlement was made between the parties several months before the commencement of proceedings in bankruptcy; that the warehouse receipt was issued December 2, 1873, and mailed to the defendant on the next day, and received by him about the last of December; and that the defendant received the grain without reasonable cause to believe the defendant insolvent.

[See note at end of case.]

[In bankruptcy. Action by Lloyd Brooke, assignee of C. M. Comstock & Co., against Woodson A. Scoggins, to recover the value of wheat transferred by the bankrupt by way of preference. Verdict for defendant.]

William Strong, for plaintiff.

T. V. Shoup, W. S. Newberry, and Robert Bybee, for defendant.

DEADY, District Judge. Gentlemen of the Jury: Sections 35 and 39 of the bankrupt act [of 1867; 14 Stat. 534], so far as applicable to this case, provide, that if any person being insolvent or in contemplation of insolvency, shall make any payment or transfer of any money or property with intent to give a preference to one of his creditors, or defeat or delay the operation of the act, such person shall be deemed to have committed an act of bankruptcy; and if the creditor receiving such payment or transfer has, at the time, reasonable cause to believe that such person is insolvent, and that the same is made in fraud of the act, such payment or transfer is void, and the assignee of the bankrupt may recover the same, or its value, from the person so receiving it, for the benefit of the bankrupt's creditors.

The complaint in this case alleges that on December 2, 1873, the firm of C. B. Comstock & Co., consisting of C. B. Comstock and J. S. Scoggins, transferred and delivered to the defendant, Woodson A. Scoggins, five thousand bushels of wheat of the value of five thousand dollars in gold coin, as a payment upon their indebtedness to him, in violation of these provisions of the act—that is, that said Comstock & Co. were then insolvent, and, being so insolvent, delivered said wheat to the defendant with the intent to give him a preference over other creditors, and to defeat the operation of the act; and that the defendant received said wheat in violation of such provisions—that is, with reasonable cause to believe that Comstock & Co. were then insolvent, and that the delivery thereof to him was a fraud upon the act.

The complaint also alleges that on December 16, 1873, a petition in bankruptcy was filed in the district court for this district against Comstock & Co., by one of their creditors, and that on January 10, 1874, they were adjudged bankrupts thereon; and that the plaintiff was thereafter duly appointed assignee of their estate, and on February 4, 1874, received a conveyance of the same from the register in bankruptcy.

In answer to these latter allegations of the complaint, the defendant alleges a want of information sufficient to form a belief, and the effect of this is to put the plaintiff upon the proof of them. For this purpose he has given in evidence a transcript of the record of the district court in the bankruptcy proceedings. It is the duty of the court to declare to you the legal effect of this writing by stating to you what conclusions of fact are, or are not, proven by it, and whether conclusively or otherwise, and it is your duty to accept the same and act accordingly. By this record all the facts alleged in the petition in bankruptcy and necessary to give the court jurisdiction are established, at least prima facie, as against all the world. These facts are the existence of the debt of the petitioning creditor, the insolvency of Comstock & Co., and the act of bankruptcy alleged in the petition, which they were adjudged to have committed—that is, the delivery of this five thousand bushels of wheat to the defendant in satisfaction of a debt then owing by them to him, with intent to thereby give him a preference, and to defeat and delay the operation of the act. But it proves nothing upon the question whether the defendant received said wheat with reasonable cause to believe that Comstock & Co. were insolvent, or that such delivery was a fraud upon the act. Nothing concerning this question was alleged in the petition or before the court. Comstock & Co. having transferred this wheat to the defendant contrary to the act, they thereby committed an act of bankruptcy, but whether the defendant received it or not contrary to the act is another question, and one not included in the adjudication. In your deliberations, then, you are to consider these three conclusions of fact proven for the purposes of this case —that is: First, the existence of the debt of the petitioning creditor in bankruptcy; second, the insolvency of Comstock & Co.; and, third, the transfer of the wheat by them to the defendant contrary to the act.

The defendant, by the denials in his answer, in effect admits that he received this wheat from Comstock & Co. in satisfaction of his debt at the time alleged, but denies that he received it contrary to the bankrupt act; and further alleges that the wheat was never the property of Comstock & Co., but that Comstock & Co., as his agents, purchased it for him on October 9, 1873, "and that the same was and always has been since the purchase aforesaid the property of this defendant." This part of the an-

swer is controverted by the replication of the plaintiff.

It is claimed on behalf of the defendants that on October 13, 1873, at Portland, and when he had no reasonable cause to believe Comstock & Co. insolvent, he had a settlement of a long-standing account with them, when it was found they were indebted to him in a balance of five thousand dollars, and that it was then and there agreed between the parties that Comstock & Co., who were large dealers in grain and had a warehouse at Albany, should invest that amount of money in wheat, at Albany, for the defendant, and that in pursuance of this agreement Comstock & Co., by their agent, W. S. Newberry, on December 2, 1873, issued to the defendant a warehouse receipt for five thousand bushels of wheat, then in their warehouse at Albany, and mailed the same to him within a day or two thereafter, at Bridge Creek P. O., near his residence, in Wasco county; and that defendant received said receipt by mail about the last of said December, and actually received the wheat thereon out of said warehouse, on January 17, 1874. It is not claimed that there is any evidence that this specific wheat was ever purchased by Comstock & Co. for the defendant, or that they purchased any wheat at Albany after October 13, the date of the alleged settlement. If you find the facts as thus stated, your verdict should be for the defendant.

This conclusion involves a question of law upon which the authorities are in conflict —that is, what was the legal effect of the warehouse receipt issued to the defendant as stated? I think the rule I am about to give you the most practical and best calculated to accomplish the intent of the parties to such transactions and promote the dealing in such commodities. It being found by you that Comstock & Co. were authorized by the defendant on October 13, to invest five thousand dollars in wheat for him, they might, so far as he was concerned, have sold him their own wheat in their warehouse at Albany; and if they issued this receipt to him in pursuance of such authority and for such purpose on December 2, 1873, and mailed it to him, the transaction was a sale and delivery of five thousand bushels of wheat to the defendant in payment of his debt from the date of such mailing, that being equivalent to a delivery of the receipt to him. But Comstock & Co. must have had that amount of wheat in the warehouse at the time; not covered by other receipts or otherwise disposed of, and it is immaterial whether such five thousand bushels was separated and set apart for the defendant or was mixed with other grain in the warehouse. From the constructive delivery of the receipt to the defendant in the mail, at Portland, the property in five thousand bushels of wheat in the Albany warehouse was vested in him, if the same was then not otherwise disposed of. At any time thereafter he might have separated it from the general mass of grain in the warehouse, or if the warehousemen at any time removed all the grain but five thousand bushels, this remainder would be his specific property. But the settlement and agreement of October 13, as here stated, was not a payment of the defendant's debt by Comstock & Co., and a deposit by the former of five thousand dollars with the latter to purchase grain for the defendant. No money passed between them. There was a settlement without payment, but an agreement to take payment of the balance found due in wheat. Until this wheat was delivered to the defendant, Comstock & Co. were his debtors the same as before. The mode of payment was changed from money to wheat, and that was all.

It is claimed on behalf of the plaintiff that the defendant, at and prior to the mailing of this receipt had reasonable cause to believe that Comstock & Co. were insolvent, and that such delivery was a fraud on the act. If you find this fact as stated your verdict should be for the plaintiff. In ascertaining whether the defendant had reasonable cause to believe that Comstock & Co. were insolvent you must remember that the fact that they were insolvent as early as December 5, is established by the adjudication in bankruptcy. In this inquiry you start out with that fact proven, and not open to question by you. Whether a creditor has reasonable cause to believe his debtor insolvent at the time of receiving payment from him, is not often susceptible of direct proof. Parties intending to violate the law in this respect and thereby secure to themselves an unjust and unlawful advantage, do not ordinarily publish their intentions, and very often resort to all kinds of falsehoods and deceits to cover them up or disguise them. The proof of such knowledge is generally found in the circumstances of the case, and it is peculiarly a question for the best judgment of the jury. To this end, you should consider well the circumstances of the parties, and the transactions—the residence of the parties, the relationship of the defendant to both partners in the firm of Comstock & Co. his long business relations with them, his general intelligence and knowledge of such business, the reasonable or unreasonableness of the transaction, and the probability and consistency of the reasons and motives given for it by the parties to it. In this connection, you should consider whether the parties to this transaction when it was brought in question gave a full and truthful account of it, or whether they misrepresented or disguised it, or attempted to do so, so as to deceive or mislead the other creditors of Comstock & Co. Any serious and intentional misstatement or attempt to deceive or mislead in this respect ought to cast suspicion upon the whole transaction, and may satisfy you that the defendant received this

preference illegally—that is, with reasonable cause to believe Comstock & Co. insolvent.

But the defendant is not necessarily to be prejudiced by any misrepresentations or deceits of Comstock & Co. Comstock & Co. gave him a preference contrary to law and to the rights of the other creditors, and thereby laid themselves liable to be declared bankrupts, as they subsequently were. In so doing, they may have been guilty of falsehood and deceit without the defendant's knowledge or sanction. But still your own judgments and experience will suggest how far the misconduct of Comstock & Co., committed with the purpose of benefiting the defendant—the brother and brother-in-law of the partners—was understood and acquiesced in by him, and if so, whether he did not thereby have reason to believe that his relations were contriving to take care of him at the expense of their other creditors.

If you find the defendant had reasonable cause to believe that Comstock & Co. were insolvent, under the circumstances, you should also find that they had the same cause to believe the preference was made in fraud of the act. The law presumes that every man intends the necessary and even probable consequences of his act. Now, Comstock & Co. could not have given this preference to the defendant—as it is shown by the adjudication in bankruptcy that they did—without doing it in fraud of the act, that is, contrary to and in evasion of its provisions and fair and just operation. Upon the question of what constitutes reasonable cause to believe a debtor insolvent, I will conclude with the rule laid down by Mr. Justice Field in Toof v. Martin [13 Wall. (80 U. S.) 40]: "The statute to defeat the conveyances, does not require that the creditors should have had absolute knowledge on the point, nor even that they should, in fact, have any belief on the subject. It only requires that they should have reasonable cause to believe that such was the fact. And reasonable cause they must be considered to have had when such a state of facts was brought to their notice, in respect to the affairs and pecuniary condition of the bankrupts, as would have led prudent business men to the conclusion that they could not meet their obligations as they matured in the ordinary course of business."

The plaintiff also claims that there was no settlement and agreement between Comstock & Co. and the defendant on October 13, 1873, by which the latter agreed to take wheat in payment of the balance then found due him; but that this payment of wheat, by the issuing of this warehouse receipt to the defendant, was made by Comstock & Co. on December 2, 1873, without the direction or request of the defendant, with a view of unjustly favoring him, and that therefore the issuing and mailing of this receipt was not a delivery of the wheat, in any view of the law, until it was received and

accepted by the defendant in the latter part of December. If you find the fact to be as here stated, then the law of the case in this respect is that there was no delivery of the wheat until the receipt was received and accepted by the defendant. Upon this theory of the facts, Comstock & Co. owed the defendant five thousand dollars in money, and they could not pay him with a warehouse receipt for five thousand bushels of wheat without his consent in some form. But after the commencement of the proceedings—December 16—followed by an adjudication, Comstock & Co. had no power to transfer this wheat or deal with the property of the firm in any way. The receipt and acceptance of the warehouse receipt by the defendant after December 16, would have no effect upon the title of the property; and his subsequent possession of it, obtained from Newberry on January 17, 1874, was unlawful, and a trespass upon the property of the assignee.

But the case made in the plaintiff's complaint is an unlawful transfer by Comstock & Co. before the commencement of the proceedings in bankruptcy, and I am not advised that it would support a verdict for the plaintiff upon the ground that the defendant took the property without color of right, after the time when by relation it became the property of the assignee. No application has been made to amend the pleadings with a view of meeting such a state of facts, and therefore I instruct you that although the proof should fail to satisfy you that there was an agreement on October 13, 1873, between Comstock & Co. and the defendant, by which the latter agreed substantially to receive the debt due him from the former in wheat, you are not on that account to find a verdict for the plaintiff. But for the purpose of saving the question for further consideration and proceeding, if possible, I also instruct you, if you find a verdict for the defendant, to further find whether or not there was any such agreement made between the parties as above stated. The burden of proof is upon the party maintaining the affirmative of any question or issue before you, and unless the evidence produced is sufficient to prove the proposition, you must find it against him.

The allegation that the defendant received this wheat with reasonable cause to believe that Comstock & Co. were insolvent is made by the plaintiff and denied by the defendant. The burden of proof in respect to it, is therefore upon the former. But the matter being more particularly within the knowledge of the defendant than the plaintiff, you may infer that any explanation or circumstance material to a full understanding of the transaction, which the defendant has failed to produce before you when with reasonable diligence he might have done so, would have made against him. Of this nature, I think, is the failure to produce the warehouse re-

ceipt or show that he used any diligence to obtain it—it being the foundation of his title to the property. But it is for you to determine what effect, if any, is to be given to the circumstance. The allegation of a settlement and agreement to take his debt in wheat on October 13 is made by the defendant and denied by the plaintiff. The burden of proof to establish it is therefore upon the former.

This is a civil action, and you are to decide according to the weight or preponderance of the evidence where there is a conflict, but are to be reasonably satisfied in any case that any fact is proven before you find it so. You are the judges of the value of the evidence given by the witnesses. In estimating it you should consider who they are and what relation, if any, they bear to the parties and the transaction. For instance, the witnesses called by the defendant are himself, C. B. Comstock, W. S. Newberry, and Robert Bybee. The defendant, of course, is pecuniarily interested. Comstock is the brother-in-law of the defendant, and the principal actor in the transaction which you are called upon to investigate, and which, by the adjudication in bankruptcy, has already been found unlawful and improper, so far as he is concerned. Newberry was a principal actor in the transaction, and now appears both as a witness and counsel for the defendant; Bybee was not an actor in the transaction, but he testifies in regard to an important and disputed particular in the case, and is also retained as counsel for the defendant. I do not mention these circumstances for the purpose of casting any reflection upon these witnesses, but to call your attention to the fact. Under the circumstances, neither of them can be said to be a disinterested witness, and therefore entitled to full credit. Starting with this fact, that they are not disinterested witnesses, it is for you to determine what credit they are entitled to and what value ought to be placed upon their evidence.

Counsel for defendant has directly and indirectly complained before you of the unreasonableness of the adjudication by which Comstock & Co. were declared bankrupts, and cited the fact as an illustration of the harshness of the law. This criticism is entirely gratuitous. Although it appears that Comstock & Co. had in their possession on November 1, 1873, about 100,000 bushels of wheat, nevertheless, when proceedings in bankruptcy were commenced against them, and even on November 1, they may have owed two dollars for every one they were worth, and for aught you know or appears, such was the case. It appears from the proceedings in bankruptcy that they were either unable or unwilling on December 16th to pay Koshland Bros. a debt of seven hundred and fifty dollars, contracted in August for grain sacks. Is it probable that parties in a large business and owning 100,000 bushels of wheat in 1873, if anywhere near solvent, would have allowed themselves to be arraigned in a bankrupt court on an acknowledged debt of only seven hundred and fifty dollars? I think not. Besides, Comstock & Co., while they made some technical and dilatory objections to the proceedings in bankruptcy, never answered the petition on its merits or pretended to deny their insolvency. Counsel for defendant also complains of the working of the bankrupt act and apparently seeks to prejudice your minds against it, and thereby prevent or hinder its due operation and enforcement in this case. It is said there is nothing wrong or immoral in a debtor in failing circumstances preferring one creditor to another, or in a creditor of such a debtor seeking and obtaining such a preference, and that therefore the bankrupt act [March 2, 1867; 14 Stat. 517], which forbids and seeks to prevent such preferences, is a harsh and unreasonable restraint upon the parties.

The question of the policy of a bankrupt act, as well as every other statute, is to be determined by congress, representing the whole people of the United States. As citizens of the United States you have an undoubted right to cast your votes and influence for or against this or any other legislation, as you may believe best for the public good. But as jurors you are bound by your oaths to fairly administer the law as you find it, without reference to your individual opinions concerning the policy of it. The primary object of the bankrupt act is to secure the distribution of the property of an insolvent debtor ratably among his creditors. The evil to be remedied and prevented is the power of such a debtor to prefer one creditor over another, or the right of such creditor to obtain such a preference, with or without the consent or co-operation of the debtor. In all this there is nothing but the plainest justice and equity. The property of an insolvent rightfully belongs to his creditors in proportion to the amount of their debts. On the contrary the vicious "principle of preference," as it is styled by Mr. Justice Nelson in Cunningham v. Freeborn, 11 Wend. 256, disregarding this rule of natural equity, permits one creditor to appropriate to himself what belongs to the others. By way of excuse or justification, this proceeding has been called a "race of diligence;" but it is in fact more often than otherwise a race of dishonesty, in which, as might be expected, the strong, quick-witted, greedy, and unscrupulous creditor succeeds at the expense of the weak, honest, or confiding one. As was said by the judge in Cunningham v. Freeborn, supra, this principle is frequently "made subservient to the gratification of vindictive feelings and the foulest ingratitude, as well as injustice towards honest and confiding creditors."

If you find for the defendant, you simply say so. If you find for the plaintiff you

should assess his damages at the value of the wheat delivered to the defendant with legal interest from the date of delivery.

NOTE [from original report]. The jury, after an absence of two or three hours, found a verdict for the defendant; and also found specially: (1) That the agreement and settlement of October 13, 1873, was made as stated. (2) That the warehouse receipt was issued on December 2, 1873, and mailed to defendant on the next day. (3) That defendant received the receipt about the last of December; and (4) That defendant received the wheat without reasonable cause to believe the defendant insolvent.

[NOTE. The title to personal property incapable of actual delivery passes, as against the seller's creditors, by delivery of the bill of sale or other instrument intended to transfer the title. Gibson v. Stevens, 8 How. (49 U. S.) 384; U. S. v. Delaware Ins. Co., Case No. 14,-942; The Sarah Ann, Id. 12,342; Wheeler v. Sumner, Id. 17,501; Barrett v. Goddard, Id. 1,046. Symbolical delivery is sufficient.—Leonard v. Davis, 1 Black (66 U. S.) 476, and cases cited,—as of floating logs,—Id. But if any thing remains to be done on the part of the seller, as between him and the buyers, before the commodity purchased is to be delivered, a complete present right of property has not attached in the buyer. Barrett v. Goddard, Case No. 1,046. So a warehouse receipt for grain in consideration of payment of a sum of money, not actually delivered, gives no title to specific grain as against third persons. Jackson v. Hale, 14 How. (55 U. S.) 525.

[The assignment of a warehouse receipt transfers legal title and constructive possession, so that the assignee can maintain an action for conversion. First Nat. Bank of Cincinnati v. Bates, 1 Fed. 702. See, also, Gibson v. Stevens, 8 How. (49 U. S.) 399; Harris v. Bradley, Case No. 6,116; McNeill v. Hill, Id. 8,914. The pledge of a warehouse receipt for specified grain in an elevator may sustain an action of trover for the grain. Easton v. Hodges, 18 Fed. 677. Holders of warehouse receipts for grain which has been mixed, and a portion disposed of by the warehouseman, are entitled to a pro rata proportion of the property. Rahilly v. Wilson, Case No. 11,531. And see Dows v. Ekstrone, 3 Fed. 19.]